IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID THOMPSON | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 12-2308 |
| v. | : | |
| | : | |
| WYNNEWOOD OF LOWER MERION | : | |
| TOWNSHIP, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION**

**Slomsky, J.**                                                    **September 13, 2012**

I.      **INTRODUCTION**

Plaintiff David Thompson, proceeding *pro se*, filed suit against two municipalities,

Wynnewood of Lower Merion Township ("Lower Merion Township")[1] and the City of

Philadelphia, following his April 5, 2010 street encounter with police officers employed by both

municipalities.

In the Amended Complaint, Plaintiff asserts the following:[2] (1) a violation of his right not

to be subjected to an unreasonable search and seizure under both the U.S. Constitution and the

_____

[1]  Wynnewood is not a municipality.  Rather, it is a designated locality within Lower
Merion Township with its own zip code.  The pertinent municipality in this case is Lower
Merion Township.

[2]  Because the Amended Complaint is not comprised of numbered counts with precise
facts in support of each claim, it is difficult to accurately summarize the nature of Plaintiff's
claims.  Despite this imprecision, the Court is construing the Amended Complaint in the light
most favorable to Plaintiff and affording him the latitude required when a party is proceeding *pro
se*.

1

Constitution of the Commonwealth of Pennsylvania;[3] (2) a violation of his substantive due

process rights under the Fourteenth Amendment to the U.S. Constitution for being deprived of

medical care;[4] (3) an entitlement to monetary damages under 42 U.S.C. § 1983 as a result of the

violation of his constitutional rights; and (4) common law tort violations committed by

Defendants, including claims of negligence, assault, battery, intentional infliction of emotional

distress, and false arrest.[5] (Doc. No. 1, Ex. A ¶ 1-3.)  The Amended Complaint seeks damages of

---

[3]  In the Amended Complaint, Plaintiff asserts that his right against "unreasonable searches and seizures" was violated under the Fourth Amendment to the Constitution of the Commonwealth of Pennsylvania.  The right against "unreasonable searches and seizures" is set forth in Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania.  On the federal level, protection against unreasonable searches and seizures is afforded by the Fourth Amendment.

[4]  The Fourteenth Amendment substantive due process claim is described in the Amended Complaint as a "failure to render first aid," without referring to the Fourteenth Amendment. (Doc. No. 1, Ex. A ¶ 3.)  For purposes of this Opinion, the Court will address Plaintiff's "failure to render first aid" claim using a Fourteenth Amendment analysis.  See infra Section IV.C.4. This claim does not appear to fall within the purview of a separate pendent state tort claim. These claims are discussed in Section IV.D.

[5]  The Amended Complaint asserts that the common law tort claims are brought against Defendants in their "official capacities, respectively as state actors."  (Doc. No. 1, Ex. A ¶ 3.) Specifically, the Complaint states:

> 3.    Plaintiff brings this common law tort action against defendants, in their official capacities, respectively as state actors, of negligence under common law[,] assault, battery, intentional infliction [of] emotional distress, failure to render first aid and false arrest.  Also plaintiff avers rights violated and seeks damages under the fourth amendment of the Commonwealth of Pennsylvania State Constitution for illegal search and seizure was violated; and vicarious liability of governmental townships of the first class municipalities[,] units[,] and cities of the first class employees, under state law, waiver of sovereign immunity under 42 Pa. C.S.A., section 8542[,] [o]f the wrongful acts and negligence of employees acting within the scope of employment[.]

$25,000.  (Doc. No. 1, Ex. A ¶ 25.)

On April 3, 2012, Plaintiff instituted this action by filing a Complaint in the Court of Common Pleas for Montgomery County.  (Doc. No. 1 at 2.)  On April 25, 2012, Plaintiff filed an Amended Complaint, naming as Defendants Lower Merion Township, Lower Merion Police Department ("LMPD"), Lower Merion Police Officer Coletta ("Coletta"), Lower Merion Township Manager Douglas Cleland ("Cleland"), the City of Philadelphia, the City of Philadelphia Police Department ("PPD"), City of Philadelphia Police Officer Horne ("Horne"), City of Philadelphia Unidentified Police Officers, and City of Philadelphia Police Sergeant Hernandez ("Sgt. Hernandez").  (Doc. No. 1, Ex. A.)  On April 27, 2012, Lower Merion Township removed the case to this Court.[6]  (Doc. No. 1.)

---

4.      Plaintiff avers a violation under both Constitutions which amounts to a deprivation of plaintiff's constitutional right under the fourth amendment of the United States and Pennsylvania's Constitution.

18.     Lower Merion Township, Lower Merion Police Department and Police Officer Colleta wasted taxpayer resources by violating its own police procedure and state law by acting unlawfully [and] negligently confronting and stopping plaintiff without probable cause because plaintiff never fit the alleged perpetrators description given at the heat of the moment as factually true, and caused plaintiff intentional infliction of emotional distress and battery [by] being accused of shooting police and [by being told] plaintiff will be shot if plaintiff did not stop.

In construing the Amended Complaint in the light most favorable to Plaintiff, the Court will consider the asserted claims as tort actions for negligence, assault, battery, false arrest, and intentional infliction of emotional distress and as being brought against Defendant Police Officers in their individual capacity.

[6] The City of Philadelphia has never formally consented to Lower Merion Township's removal.  The City of Philadelphia, however, has implicitly consented to the removal by responding to the Amended Complaint, filing a Motion to Dismiss, and appearing at a July 6, 2012 pretrial hearing on the Motions to Dismiss the Amended Complaint.

Presently before the Court are Motions to Dismiss the Amended Complaint filed by

Lower Merion Township, LMPD, Coletta, and Cleland (Doc. No. 2), and the City of

Philadelphia, PPD, Horne, City of Philadelphia Unidentified Police Officers, and Sgt. Hernandez

(Doc. No. 6), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

upon which relief can be granted.  In turn, Plaintiff has filed two Responses in Opposition to

Defendants' respective Motions to Dismiss.[7]  On July 6, 2012, the Court held a hearing on

Defendants' Motions to Dismiss.  (Doc. No. 10.)

Upon consideration of the parties' briefs, exhibits, and arguments made at the

July 6, 2012 hearing, and after an independent review of the allegations in the Amended

Complaint, the Court will grant the Motions to Dismiss in part and deny them in part.

## II.    STATEMENT OF FACTS

The Court will recite the facts in the light most favorable to Plaintiff.  This matter arises

from events that occurred during Plaintiff's encounter with police officers from the Lower

Merion Police Department ("LMPD") and Philadelphia Police Department ("PPD").  (Doc. No.

1, Ex. A ¶ 6.)

On April 5, 2010, at 5:45 a.m., Plaintiff encountered LMPD Officer Coletta while

walking in the area of 6 East Lancaster Avenue in Lower Merion Township.  (Id.)  After

identifying himself, Officer Coletta informed Plaintiff that he suspected Plaintiff may be the

---

[7]  On May 16, 2012, Plaintiff filed a Response to Lower Merion Township's Motion to
Dismiss entitled "Motion to Deny Defendants Lower Merion Township, Lower Merion Police
Department, Lower Merion Police Officer Coletta, and Lower Merion Township Manager,
Douglas Cleland [sic] Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P.
12(b)(6)."  (Doc. No. 5.)  On June 4, 2012, Plaintiff filed a Response to the City of Philadelphia's
Motion to Dismiss entitled "Motion to Deny Defendants' Motion for Partial Dismissal to
F.R.C.P. 12(b)(6)."  (Doc. No. 7.)

individual wanted for a recent shooting of a Philadelphia police sergeant.[8]  (Doc. No. 1, Ex. A ¶¶ 11-12.)  Officer Coletta threatened to shoot Plaintiff if he failed to accede to, or resisted, the directive to stop walking.  (Id.)  Plaintiff complied with Officer Coletta's order and offered no resistance during his encounter with the police.  (Id.)  He contends his detainment was "without probable cause."  (Doc. No. 1, Ex. A ¶ 18.)

In the Amended Complaint, Plaintiff alleges that police were seeking two black male perpetrators in their mid-twenties whose distinguishable features included braided hair.  (Doc. No. 1, Ex. A ¶ 11.)  Moreover, law enforcement believed that the shooter had a tattoo of a tear drop located over one eye.  (Doc. No. 1, Ex. A ¶ 12.)

Conversely, Plaintiff is a forty-one-year-old male.  (Doc. No. 1, Ex. A ¶ 10.)  He describes himself as having brown skin, but maintains that he is not African-American.  (Id.)  Additionally, he does not have braided hair or tattoos on his face.  (Id.)  On the morning of the encounter with the police, he was "wearing jogging attire of a yellow tank shirt, sweat pants and a red jogging pouch attach[ed] to [his] waist" and was holding "a banana and book."  (Id.)  He maintains that the red pouch "was so small" that it "could only carry identification cards and similar items of size."  (Doc. No. 1, Ex. A ¶ 15.)

Following his initial stop by Officer Coletta, Plaintiff was "submerged by an onslaught gang of police officers" from both police departments.  (Doc. No. 1, Ex. A ¶ 13.)  He identifies Philadelphia Police Officer Horne as one of the officers who assaulted him, and Philadelphia

---

[8]  Subsequent to the encounter, it was revealed that the police sergeant fabricated the assault on himself to conceal a self-inflicted gunshot wound.  (Doc. No. 1, Ex. A ¶ 22.)  Plaintiff admits, however, that at the time of his incident with the police, the officers "reasonably believed" that there were two unapprehended perpetrators suspected of shooting at the police sergeant in the vicinity of Lower Merion Township.  (Doc. No. 1, Ex. A ¶ 12.)

Police Sergeant Hernandez as the officer who searched him illegally.  (Id.)  He asserts that

Officer Horne was one of four police officers who violently twisted his wrists, kicked his legs,

handcuffed him, and caused him to fall "face forward" onto the ground.  (Id.)  Once he was on

the ground, Sergeant Hernandez conducted a search of Plaintiff's red "jogging pouch" or carry

bag.  (Doc. No. 1, Ex. A ¶ 15.)  He maintains that this search was "unauthorized."  (Id.)

Following an investigation at the scene, Plaintiff was not arrested and was free to leave.

Plaintiff then walked to Lankenau Hospital where he was diagnosed with, and received

treatment for, a sprain and contusion to his left hand.[9]  (Doc. No. 1, Ex. A ¶ 16; Doc. No. 1, Ex.

C to Ex. A at 2.)  Plaintiff contends that he suffered a tissue injury to, and swelling in, his wrist

and arm.  (Doc. No. 1, Ex. A ¶ 17.)  Thereafter, he received occupational therapy and treatment

for elbow and arm pain during three visits to Jefferson Hospital from May 7, 2010 to June 1,

2010.  (Doc. No. 1, Ex. D to Ex. A at 1.)  As a result of these events, Plaintiff filed the present

suit in the Court of Common Pleas for Montgomery County.  Defendants subsequently removed

the case to this Court.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Fed. R. Civ. P. 12(b)(6) is set forth in the U.S.

Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also

Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Twombly standard requires a plaintiff to plead

"enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  As a result

of the Twombly holding, plaintiffs must have "nudged [their] claims across the line from

---

[9]  Plaintiff's medical records are attached to the Amended Complaint as Exhibits "C" and "D."  (Doc. No. 1, ECF p. 16, 22.)

conceivable to plausible, or the complaint must be dismissed." Id.  In Iqbal, the Supreme Court

further elaborated on the Twombly plausibility standard by holding that "a complaint must

contain sufficient factual matter," that if accepted as true, states a claim for "relief that is

plausible on its face." Iqbal, 556 U.S. at 678.  Under Iqbal, "where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (citation

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id.

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v.

Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that district courts

in this Circuit must utilize in evaluating whether allegations in a complaint survive a 12(b)(6)

motion to dismiss.  629 F.3d at 130; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

Cir. 2009) (applying the principles of Iqbal and articulating a two-part test).

In the first part of the analysis, the court must "'tak[e] note of the elements a plaintiff

must plead to state a claim.'" Santiago, 629 F.3d at 130 (quoting Iqbal, 556 U.S. at 675).

Second, the court should identify allegations that, "because they are no more than conclusions,

are not entitled to assumptions of truth." Id.  Finally, "where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement for relief." Id.  Essentially, while a district court must accept all of the

complaint's well-pleaded facts as true, a complaint must do more than allege a plaintiff's

entitlement to relief–it must "show" such an entitlement with the facts. Fowler, 578 F.3d at 210-

11 (citing Phillips v. City of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

7

IV.     **DISCUSSION**

A.      **The LMPD and PPD are Divisions of Municipalities and Cannot Be Sued as Individual Entities**

Both the Lower Merion Police Department and the City of Philadelphia Police Department maintain that, as police departments, they are not amenable to suit because they are subunits of municipalities.  They assert that Plaintiff's claims against them merge with his claims against the municipalities themselves and that both police departments must be dismissed from this suit.  The Court agrees.

Section 1983 imposes liability on anyone who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws."  Blessing v. Freestone, 520 U.S. 329, 341 (1997).  In a § 1983 action, police departments cannot be sued in conjunction with municipalities because a police department is merely an administrative arm of a local municipality and not a separate entity.  See Hankin Family P'ship v. Upper Merion Twp., No. 01-1622, 2012 WL 43610, at *9 n.19 (E.D. Pa. Jan. 6, 2012) (citing Martin v. Red Lion Police Dept., 146 F. App'x 558, 562 (3d Cir. 2005)); Debellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001).  Here, because the LMPD and PPD are divisions of larger municipal entities, Plaintiff's claims against the police departments are merged with the claims against Defendants Lower Merion Township and the City of Philadelphia, and dismissal of the police departments as Defendants is warranted.

B.      **Plaintiff's Claims Against Township Manager Cleland Must Be Dismissed for Lack of Personal Involvement in the Alleged Violations**

Plaintiff names Lower Merion Township Manager Douglas Cleland as a Defendant in his Amended Complaint.  A defendant in a civil rights action must have personal involvement in the

alleged wrongs.  Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  Liability cannot be predicated solely on a theory of respondeat superior.  Hampton, 546 F.2d at 1082.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  See Rode v. Dellarciprete, 845 F.3d 1195, 1208 (3d Cir. 1988) (holding that a plaintiff must allege knowledge and acquiescence in order to hold a government supervisor liable for the actions of his employees).

Here, it appears that Cleland has been named as a Defendant by virtue of his title as Township Manager of Lower Merion Township.  Plaintiff has not pled any facts which would permit an inference that Cleland was personally involved in, or had actual knowledge of, the alleged incident, or any violations of federal or state law.  Accordingly, Plaintiff's claims against Cleland will be dismissed.

### C.    Federal Claims

As a preliminary matter, Defendant Lower Merion Township argues that Police Officer Coletta is entitled to qualified immunity on the federal claims.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  When determining whether a government actor is entitled to qualified immunity, a court must decide: (1) whether the facts alleged demonstrate that a state actor violated a constitutional right; and (2) whether that right is clearly established so that a reasonable person would know that the conduct was unlawful.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  A trial judge has discretion in deciding which of

the two prongs to consider first "in light of the circumstances in the particular case at hand."

Pearson v. Callahan, 555 U.S. 223, 236 (2009).  "Even when the right is clearly established, the

[state actor] is entitled to qualified immunity if he reached a reasonable, but mistaken conclusion,

that the law's requirements were met."  Furey v. Temple Univ., No. 09-2474, 2012 WL 3155152,

at *34 (E.D. Pa. Aug. 3, 2012) (citing Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir.

1995)).

    As discussed below, the Court finds that Plaintiff alleged sufficient facts at the motion to

dismiss stage of the litigation to demonstrate that his Fourth Amendment rights were violated

when the officers stopped and detained him.  Accordingly, Officer Coletta is not entitled to

qualified immunity at this time.

    1.        **Plaintiff Has Sufficiently Pled That Defendant Police Officers Violated His Fourth Amendment Rights By Detaining Him Without Reasonable Suspicion**

    The Fourth Amendment to the U.S. Constitution protects against "unreasonable searches

and seizures."  U.S. Const. amend. IV.  A police officer possessing reasonable suspicion that a

person is engaging in criminal activity may conduct a brief investigative stop of that person

without violating the constitutional right against unreasonable search and seizure.  Terry v. Ohio,

392 U.S. 1, 37 (1968).  In the Third Circuit, an investigatory stop will be sustained "where the

detaining officers [had] a particularized and objective basis for suspecting the particular person

stopped of criminal activity."  United States v. Hawkins, 811 F.2d 210,  213 (3d Cir. 1987)

(internal citation omitted).  In order to determine whether reasonable suspicion existed, a court

must look at the totality of the circumstances.  United States v. Arvizu, 534 U.S. 266, 273

(2002).

The U.S. Supreme Court has held that a description that relies on race or ethnicity alone will not provide reasonable suspicion of criminality required by the Fourth Amendment in order to make an investigative stop.  United States v. Brignoni-Ponce, 422 U.S. 873, 886 (1975); see also Brown v. City of Oneonta, 221 F.3d 329, 334 (2d Cir. 1999) (observing that a "description of race and gender alone will rarely provide reasonable suspicion").  In addition, the Court has held that, in the context of an anonymous tip, factors such as race and location do not constitute sufficient predictive information to justify an investigative stop based on reasonable suspicion.  Florida v. J.L., 529 U.S. 266, 272 (2000).

From the Amended Complaint, it is clear that Plaintiff is alleging that his dark skin color and proximity to the site of the alleged shooting were the primary motivating factors for his detainment.  Plaintiff concedes that the police "reasonably believed" that there were two unapprehended assailants suspected of shooting at a police officer who were located somewhere in Lower Merion Township.  However, despite the similarity of dark-colored skin, there were significant factual discrepancies between the physical characteristics of Plaintiff and the alleged perpetrators.  The suspected attackers were black males in their mid-twenties whose distinguishable features included braided hair.  Moreover, the police believed that the suspected shooter had a tattoo of a tear drop located over one eye.  In contrast, Plaintiff is a forty-one-year-old male without tattoos on his face.  He does not have braided hair.

Here, Plaintiff has pled enough facts at the motion to dismiss stage to cast doubt on the existence of reasonable suspicion for his detainment.  As such, Plaintiff may proceed with his claim that the officers in their individual capacity violated his constitutional right against unreasonable search and seizure.

2.        Plaintiff Has Sufficiently Pled That He Was Subjected to a False Arrest
          by Defendant Police Officers

A claim for false arrest under § 1983 also originates from the Fourth Amendment

guarantee against unreasonable seizures.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636

(3d Cir. 1995); see also Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (noting

that "the Fourth Amendment prohibits arrest without probable cause").  Thus, to succeed on his

false arrest claim under § 1983, Plaintiff must show that the arresting officers lacked probable

cause to arrest him.  Probable cause to arrest exists when the facts and circumstances within the

arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to

believe that an offense has been or is being committed by the person to be arrested.  Merkle v.

Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  In determining whether probable

cause to arrest exists, a court applies an objective standard based on "the facts available to the

officers at the moment of arrest."  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir.

1994).

In making the probable cause determination, the question is whether the description of the

assailants, as well as the time and geographic factors, were sufficient for a prudent person to

believe the petitioner committed the offense.  United States ex rel. Wright v. Cuyler, 563 F.2d

627, 630 (3d Cir. 1977); see also Beck v. Ohio, 397 U.S. 86, 89 (1964).  The Third Circuit has

found probable cause for an arrest where the physical characteristics of the person detained

perfectly matched the description of the alleged perpetrator's race, height, weight, color of hair,

distinctive type of hair styling, precise color of clothing, and the suspect was apprehended near

the scene of the crime one night after it had occurred.  United States ex rel. Hollman v. Rundle,

12

461 F.2d 758, 759 (3d Cir. 1972).  The Third Circuit has held, however, that race and age alone do not constitute probable cause.  United States ex rel. Wright, 563 F.2d at 630.

Plaintiff asserts that he was arrested without probable cause because there were palpable differences between the description of the alleged perpetrators and his own appearance on April 5, 2010.  As noted previously, Plaintiff contends that police were seeking two African-American males in their mid-twenties with braided hair.  Plaintiff also maintains that the police suspected the shooter had a tattoo of a tear drop located over one eye.  In contrast, Plaintiff is a forty-one-year-old male without braided hair or tattoos on his face.  Moreover, Plaintiff alleges that despite his brown skin color, he is not African-American like the suspected perpetrators.

Reading the allegations in the Amended Complaint in the light most favorable to Plaintiff, he has pled enough facts to show the absence of probable cause to arrest him.  Accordingly, Plaintiff may proceed with his federal false arrest claim against Defendant Police Officers in their individual capacity.

3.    Plaintiff Has Sufficiently Pled an Excessive Force Claim Against Defendant Police Officers

The Fourth Amendment to the U.S. Constitution protects persons from being subjected to excessive force while being arrested.  Graham v. Connor, 490 U.S. 386, 390 (1989).  To determine whether an officer used excessive force, the inquiry is whether his actions were objectively reasonable in light of the facts and circumstances with which he was confronted.  Id. at 397; Stewart v. Moll, 717 F. Supp. 2d 454, 460 (E.D. Pa. 2010).  The use of force should be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396-97.  In considering the unique

13

circumstances of each case, the Court should consider: the severity of the crime at issue; whether

the suspect posed an immediate threat to the safety of the officers or others; and whether he was

actively resisting arrest or attempting to evade arrest by flight.  Id. at 396.  The Third Circuit has

provided additional factors to consider, including the possibility that persons subject to police

action are themselves violent or dangerous, the duration of the action, whether the action took

place in the context of effecting an arrest, the possibility that the suspect may have been armed,

and the number of persons police officers had to contend with at one time.  Sharrar v. Felsing,

128 F.3d 810, 822 (3d Cir. 1997).

　　　　Here, the Amended Complaint alleges that Defendant Police Officers "violently

twist[ed]" Plaintiff's arms and "kick[ed]" his legs so hard that he "[fell] to the ground," (Doc.

No. 1, Ex. A ¶ 14), and that he required a trip to the hospital.  Plaintiff also contends that he

followed the commands of the officers and displayed an unthreatening appearance to the police.

It is evident that at this stage of the case, after considering the above factors in conjunction with

the facts alleged by Plaintiff, he has alleged sufficient facts to support his claim that excessive

force was used.  Consequently, the Fourth Amendment excessive force claim will not be

dismissed against Defendant Police Officers acting in their individual capacity.

　　　　4.　　　Plaintiff's Claim For Failure to Provide Medical Treatment Will Be
　　　　　　　　Dismissed Against All Defendants

　　　　A plaintiff may assert a Fourteenth Amendment substantive due process claim for

deprivation of medical care "in limited situations."  Hogan v. City of Easton, No. 04-759, 2004

WL 1836992, at *10 (E.D. Pa. Aug. 17, 2004).  In DeShaney v. Winnebago County Department

of Social Services, 489 U.S. 189 (1989), the U.S. Supreme Court held that a claim for violation

14

of substantive due process may be brought where the State had custody of the plaintiff.  489 U.S.

at 199-200.  As the Court noted:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs–*e.g.,* food, clothing, shelter, medical care, and reasonable safety–it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

Id. (internal citations omitted).

In order to state a claim for unconstitutional deprivation of medical care under the

Fourteenth Amendment, a plaintiff must allege: (1) a serious medical need, and (2) acts or

omissions by police officers that show deliberate indifference to that need.  Natale v.

Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d. Cir. 2003).  A medical need is

serious if it is "one that is so obvious that a lay person would easily recognize the necessity for a

doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347

(3d Cir. 1987).  The seriousness prong is also met if the effect of denying or delaying care results

in the wanton infliction of pain or a life-long handicap or permanent loss.  Id.  Deliberate

indifference is a "subjective standard of liability consistent with recklessness as that term is

defined in criminal law."  Natale, 318 F.3d at 582.  The Third Circuit has found deliberate

indifference "in situations where 'necessary medical treatment is delayed for non-medical

reasons.'"  Id. (citing Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 347).

Here, Plaintiff alleges only minimal injuries to his left hand and elbow for which he

received treatment and therapy over a three-week period following the alleged incident.

15

Moreover, following his encounter with the police, Plaintiff was healthy enough to walk to Lankenau Hospital on his own where he received treatment for any injuries.  Necessary medical treatment was not delayed by any acts of Defendants.  Plaintiff has alleged no facts demonstrating that Defendant Police Officers were deliberately indifferent to a serious medical need, or that Plaintiff's injuries were serious enough to trigger a Fourteenth Amendment substantive due process violation.  Accordingly, the Motions to Dismiss will be granted as to all Defendants with respect to Plaintiff's claim for failure to provide medical treatment in violation of the Fourteenth Amendment.

> 5.      Plaintiff's § 1983 Monell Claims Against Lower Merion Township and the City of Philadelphia as Municipalities Will Be Dismissed[10]

The U.S. Supreme Court has held that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A municipality cannot be held responsible for damages under § 1983 on a theory of vicarious liability.  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity can be held responsible under § 1983.  Monell, 436 U.S. at 694.  Simply put, a municipality can be liable under § 1983 only where its policies are "'the moving force [behind] the violation.'"  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989) (citations omitted).  In addition, the Third Circuit has held that "a failure to train,

---

[10]  In its Motion to Dismiss, the City of Philadelphia did not move to dismiss Plaintiff's § 1983 Monell claim.  However, it became evident at the July 6, 2012 hearing that Lower Merion Township's argument on the Monell claim was also applicable to the City of Philadelphia.  Consequently, the Court will dismiss Plaintiff's Monell claims against both municipalities.

discipline or control [an employee] can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's action or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir. 1998).

Viewing the Amended Complaint in the light most favorable to Plaintiff, he has neither alleged nor identified any Lower Merion Township or City of Philadelphia sanctioned practice or policy, or alleged the requisite contemporaneous knowledge that would establish § 1983 municipal liability under Monell and its progeny. Rather, Plaintiff's account is limited to the events surrounding his April 5, 2010 encounter with Defendant LMPD and PPD officers and subsequent receipt of medical treatment. Given these limited allegations, Plaintiff's § 1983 Monell claims against Lower Merion Township and the City of Philadelphia in their role as municipalities will be dismissed.

### D.    State Tort Claims

1.    <u>Defendants Lower Merion Township and the City of Philadelphia Have Immunity From the Pendent State Tort Claims</u>

Both Lower Merion Township and the City of Philadelphia argue that the pendent state tort claims of negligence, false arrest, assault, battery, and intentional infliction of emotional distress should be dismissed against them as municipalities and against their employees because of the immunity provided in the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"). 42 Pa. Cons. Stat. Ann. § 8541.

As a general matter, the Tort Claims Act provides legal immunity to municipalities and

their employees unless their actions fall within certain enumerated exceptions.  See 42 Pa. Cons.

Stat. Ann. § 8541 (immunizing government agencies from liability for damages caused by any

act by the agency or an agency employee, subject to the exceptions); id. § 8545 (providing

conditional legal immunity to agency employees for any injuries caused by conduct taken within

the scope of their employment).  As discussed below, Plaintiff's state law claims against the

individual Police Officers will not be dismissed, but his state law claims against Lower Merion

Township and the City of Philadelphia as municipalities will be dismissed.

The governmental immunity afforded to municipalities under the Tort Claims Act is

subject to the exceptions set forth in § 8542 of the Act.  Section 8542(a) provides as follows:

> A local agency shall be liable for damages on account of an injury
> to a person or property within the limits set forth in this subchapter
> if both of the following conditions are satisfied and the injury
> occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common
> > law or a statute creating a cause of action if the injury
> > were caused by a person not having available a defense
> > under section 8541 (relating to governmental immunity
> > generally) or section 8546 (relating to defense of
> > official immunity); and
>
> > (2) The injury was caused by the negligent acts of the
> > local agency or an employee thereof acting within the
> > scope of his office or duties with respect to one of the
> > categories listed in subsection (b). As used in this
> > paragraph, "negligent acts" shall not include acts or
> > conduct which constitutes a crime, actual fraud, actual
> > malice or willful misconduct.

Id.  Subsection (b) provides eight designated exceptions.  These exceptions are: "(1) vehicle

liability, (2) care, custody, or control of personal property, (3) real property, (4) trees, traffic

controls, and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care,

custody, and control of animals." Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 540 (E.D. Pa. 2009) (citing 42 Pa. Cons. Stat. Ann. § 8542(b)).  Therefore, a municipality "may be subjected to liability if the conduct giving rise to the action can be attributed to it or one of its employees, was negligent, and falls within one of the eight exceptions."  Id.

Here, the state tort claims alleged by Plaintiff are not among the exceptions listed in § 8542(b) of the Tort Claims Act.  Additionally, because all federal claims against Lower Merion Township and the City of Philadelphia will be dismissed, the Court declines to hear the pendent state tort claims against the municipalities.  See Lovell Mfg. Div. of Patterson-Erie Corp. v. Export-Import Bank of U.S., 843 F.2d 725, 735 (3d Cir. 1998) (holding that when all federal claims are dismissed prior to trial, a district court is powerless to hear remaining state law claims absent "extraordinary circumstances"); see also Cooper v. City of Chester, 810 F. Supp. 618, 625 (E.D. Pa. 1992).  As a result, Defendant municipalities enjoy immunity from civil liability regarding the pendent state tort claims brought against them, and those state law claims will be dismissed.

2.     Plaintiff May Proceed With His Pendent State Intentional Tort Claims
       Against Defendant Police Officers in Their Individual Capacity

Defendants also argue that the individual Police Officers are immune from Plaintiff's pendent state tort claims under the Tort Claims Act because of the broad immunity granted to governmental agencies and agency employees as described above.  The Court agrees that the individual Police Officer Defendants are immune from Plaintiff's negligence claims brought against them.  See Cooper, 810 F. Supp. at 625.  However, as discussed below, they are not immune from Plaintiff's intentional tort claims of false arrest, assault, battery, and intentional

infliction of emotional distress.

An employee of a municipality loses any immunity afforded to him or her under the Tort Claims Act if the conduct constituted "crime, actual fraud, actual malice or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550; see Robbins v. Cumberland Cnty. Children & Youth Servs., 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002). "Willful misconduct is 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" Pelzer, 656 F. Supp. 2d at 539 (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). Stated another way, an officer's tortious behavior may be characterized as willful misconduct only when an officer subjectively intends to do something he or she knows is wrongful. Jones v. City of Philadelphia, 893 A.2d 837, 843 (Pa. Commw. Ct. 2006); Fullard v. City of Philadelphia, No. 95-4949, 1996 WL 195388, at *4 (E.D. Pa. Apr. 22, 1996).

Here, Plaintiff alleges that the police actions against him on April 5, 2010 can be construed as constituting willful misconduct. He contends that Officer Coletta unlawfully detained him without probable cause based on his skin color and unnecessarily threatened to shoot him if he resisted his directive. Moreover, Plaintiff asserts that he was manhandled by an onslaught of police officers from both police departments despite his acquiescence to their orders. Specifically, Plaintiff asserts that four police officers from both departments violently twisted his wrists, kicked his legs, handcuffed him, and caused him to fall face forward onto the ground. Giving Plaintiff the benefit of all reasonable inferences, Plaintiff has pled enough facts to allow the pendent state tort claims against Defendant Police Officers in their individual capacity to proceed. A discussion of each of Plaintiff's state tort claims follows.

i. <u>False Arrest</u>

Plaintiff contends that his detainment was an arrest made without probable cause.  False arrest is defined as: "'(1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so.'" <u>Brockington v. City of Philadelphia</u>, 354 F. Supp. 2d 563, 571 n.10 (E.D. Pa. 2005) (quoting <u>McGriff v. Vidovich</u>, 699 A.2d 797, 799 n.3 (Pa. Cmmw. Ct. 1997)). "Probable cause does not lend itself to bright line distinctions and must be analyzed on a case by case basis." <u>Commonwealth v. Youngblood</u>, 359 A.2d 456, 458 (Pa. Super. 1976).  Probable cause for an arrest exists when the facts and circumstances within the officer's knowledge, and of which the officer had reasonably trustworthy information, are sufficient in themselves to lead a person of reasonable caution to believe that the person arrested had committed or was committing a crime.  <u>Commonwealth v. Richards</u>, 327 A.2d 63, 67 (Pa. 1974).  Suspicion is not enough, and the burden is on the Commonwealth to show with reasonable specificity facts sufficient to establish that probable cause existed.  <u>Id.</u>

Under Pennsylvania law, mere presence at, or near, the scene of a crime does not constitute probable cause for arrest.  <u>Commonwealth v. Anderson</u>, 302 A.2d 504, 506 (Pa. Super. 1973); <u>see also</u> <u>Commonwealth v. Reece</u>, 263 A.2d 463, 466 (Pa. 1970).   Moreover, the Pennsylvania Superior Court has failed to find probable cause to arrest when based on the same skin color as the perpetrator, but with notable discrepancies in facial hair, age, and observable behaviors. <u>Youngblood</u>, 359 A.2d at 459 (noting that "a twenty-five-year-old bearded [black] male calmly 'eyeballing' a store [in the vicinity of a crime] does not sufficiently resemble a fourteen-year-old [black] youth running from the scene of a robbery to establish probable cause for an arrest"); <u>see also</u> <u>Commonwealth v. Sams</u>, 350 A.2d 788, 789 (1976) (holding that an

21

officer lacked probable cause to arrest, despite the fact that the officer was in the immediate

vicinity of a crime alleged to have been committed by African-American males, because the sole

basis for the arrest was the skin color of the African-American male he stopped).

As previously mentioned, Plaintiff asserts that he was stopped by the police because of

his dark skin color and physical proximity to the alleged crime.  He also underscores the stark

disparities between his physical appearance and the two alleged African-American perpetrators.

Moreover, he maintains that he was not behaving in a manner indicative of criminality at the time

of his encounter with the police.  Instead, he alleges that on the morning of the encounter with

the police, he had an unthreatening appearance.  He asserts that he was wearing jogging attire,

had a small jogging pouch around his waist and held a banana and a book.  Upon being

approached by Officer Coletta, Plaintiff states he did not attempt to flee; rather, he complied with

Officer Coletta's directives.

Viewing the allegations in the Amended Complaint in the light most favorable to

Plaintiff, he has pled enough facts to prove the absence of probable cause to arrest him.

Accordingly, Plaintiff may proceed with his pendent state false arrest claim against Defendant

Police Officers in their individual capacity.

ii.  Assault and Battery

The Pennsylvania Supreme Court has held that "'[a]ssault is an intentional attempt by

force to do an injury to the person of another, and a battery is committed whenever the violence

menaced in an assault is actually done, though in ever so small a degree, upon a person.'"  Renk,

641 A.2d at 293 (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. 1950)).  When making an

arrest, a police officer is allowed to use a reasonable amount of force.  Id.  But an officer will be

liable for assault and battery when the "force used in making an arrest is unnecessary or excessive."  Id.

Here, Plaintiff alleges that Defendant Police Officers handled him harshly during his detainment.  He contends that he complied with Officer Coletta's directives.  Nevertheless, the Amended Complaint alleges that during the police encounter, the officers threatened to shoot Plaintiff and to mistreat him in such a way that he fell forcefully to the ground and suffered physical injury.  These facts permit the inference at the motion to dismiss stage that the officers' actions were unnecessary and may amount to assault and battery.  Consequently, Plaintiff will be permitted to proceed with his assault and battery claims against the Defendant Police Officers in their individual capacity.

### iii.  Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the officer's conduct was extreme and outrageous, (2) the officer's conduct caused the plaintiff severe emotional distress, and (3) the officer acted intending to cause such distress or with knowledge that such distress was substantially certain to occur.  Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001).

In Pennsylvania, to state a claim for intentional infliction of emotional distress a plaintiff must allege some physical injury caused by the defendant's conduct.  See Rolla v. Westmoreland Health Sys., 651 A.2d 160, 163 (Pa. Super. Ct. 1994); Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).  Expert medical evidence is also required that documents the alleged emotional distress and resulting physical injury.  Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29, 35 (3d Cir. 1994) (citing Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988 (Pa. 1987)).

Here, Defendant Police Officers contend that Plaintiff has failed to provide competent medical evidence that he received physical injury as a result of emotional distress caused by Defendant Police Officers' conduct.  For this reason, Defendant Police Officers argue that Plaintiff's intentional infliction of emotional distress claim should be dismissed.  The Court disagrees.

First, Plaintiff's description of Defendant Police Officers' threatening statements and aggressive behavior permit the inference that he suffered emotional distress as a result of the events in question.  Second, Plaintiff has provided medical records in support of his claim that he went to Lankenau Hospital immediately after his encounter with Defendant Police Officers because of an injury to his hand, and then subsequently received occupational therapy for his injury at Jefferson Hospital.  These allegations are sufficient at the motion to dismiss stage to establish intentional infliction of emotional distress.   Accordingly, Plaintiff will be permitted to proceed with this claim against Defendant Police Officers in their individual capacity.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' 12(b)(6) Motions to Dismiss in part and deny them in part.

The following claims will be dismissed: (1) Plaintiff's claims against the Lower Merion Police Department, the Philadelphia Police Department, and Lower Merion Township Manager Douglas Cleland; (2) Plaintiff's tort claims of negligence, false arrest, assault, battery, and intentional infliction of emotional distress against Defendants Lower Merion Township and the City of Philadelphia; (3) Plaintiff's § 1983 Monell claims against Lower Merion Township and the City of Philadelphia; and (4) Plaintiff's substantive due process claim for failure to render

first aid against all Defendants.

The following claims will remain pending: (1) Plaintiff's alleged violation of his Fourth Amendment right against unreasonable searches and seizures against Defendant Police Officers Coletta, Horne, Hernandez, and Unidentified City of Philadelphia Police Officers; [11] (2) Plaintiff's pendent state tort claims of false arrest, assault, battery, and intentional infliction of emotional distress against Defendant Police Officers Coletta, Horne, Hernandez, and Unidentified City of Philadelphia Police Officers in their individual capacity.

An appropriate Order follows.

---

[11] Plaintiff's alleged Fourth Amendment violation encompasses his three claims that Defendant Police Officers: (1) detained him for a <u>Terry</u> stop without reasonable suspicion; (2) subjected him to a false arrest; and (3) handled him with excessive force.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID THOMPSON | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 12-2308 |
| v. | : | |
| | : | |
| WYNNEWOOD OF LOWER MERION | : | |
| TOWNSHIP, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 13th day of September 2012, upon consideration of the Motions to

Dismiss filed by Defendants Douglas Cleland, Coletta, Lower Merion Police Department, and

Wynnewood of Lower Merion Township (Doc. No. 2) and by Defendants City of Philadelphia,

City of Philadelphia Police Department, City of Philadelphia Unidentified Police Officers,

Hernandez, and Horne (Doc. No. 6), Plaintiff David Thompson's Responses in Opposition (Doc.

Nos. 5 and 7), and the arguments made by the parties at the July 6, 2012 hearing, it is

**ORDERED** as follows:

1.  The Motions to Dismiss (Doc. Nos. 2 and 6) are **GRANTED in part and**

    **DENIED in part**.

2.  The following claims are **DISMISSED**:  (1) Plaintiff's claims against the Lower

    Merion Police Department, the Philadelphia Police Department and Lower

    Merion Township Manager Douglas Cleland; (2) Plaintiff's tort claims of

    negligence, false arrest, assault, battery and intentional infliction of emotional

    distress against Defendants Lower Merion Township and the City of Philadelphia;

(3) Plaintiff's § 1983 <u>Monell</u> claims against Lower Merion Township and the City of Philadelphia; and (4) Plaintiff's substantive due process claim for failure to render first aid against all Defendants.

3.  The following claims will remain **PENDING**:  (1) Plaintiff's alleged violation of his Fourth Amendment right against unreasonable searches and seizures against Defendant Police Officers Coletta, Horne, Hernandez, and Unidentified City of Philadelphia Police Officers; (2) Plaintiff's pendent state tort claims of false arrest, assault, battery, and intentional infliction of emotional distress against Defendant Police Officers Coletta, Horne, Hernandez, and Unidentified City of Philadelphia Police Officers in their individual capacity.

4.  Remaining Defendants shall file an Answer to the Amended Complaint within twenty (20) days of the date of this Order.


BY THE COURT:


 /s/ Joel H. Slomsky, J.
JOEL H. SLOMSKY, J.